# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF VERMONT.

STATE *v.* ALONZO CARRICK.

January Term, 1905.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON, HASELTON, and POWERS, JJ.

Opinion filed June 3, 1905.

*Criminal Law—Gambling—Gambling House—Nuisance at Common Law—Sufficiency of Indictment.*

The gaming house, or place, which at common law was indictable as a nuisance, was a "common" gaming house, or place; and it was essential that the indictment should allege that the house was a common gaming or gambling house, and, perhaps, that it was kept for lucre and gain.

The repeal of the prohibitory liquor law relating to nuisances, in which gambling was put on a footing with the unlawful keeping or disposition of intoxicating liquor, carried with it that part of the law relating to gambling places.

An indictment which alleges only that the respondent at, etc., "did unlawfully keep a certain place and rooms," situated, etc., "to be resorted to, used, and occupied for gambling, and did then and there knowingly permit the same to be resorted to, used and occupied for gambling by divers persons to the grand jurors unknown, to the common nuisance of all good people of this State," neither charges an offence at common law nor under any existing statute of this State.

INDICTMENT for keeping a gambling place. Heard on demurrer to the indictment at the June Term, 1904, Caledonia County, *Watson,* J., presiding. Demurrer overruled and indictment adjudged sufficient,·*pro forma.* The respondent excepted. The opinion states the case.

*Harland B. Howe* for the respondent.

The first count is bad even at common law. At common law, the indictment must charge the keeping of a "common" gambling house. Haw. P. C. (Cur. Ed.) Ch. 32 § 6; 1 Rus. Cr. (6 Ed.) 741; *In Re 'Ragier et al.,* 2 D. & R. 431; *Rex* v. *Dixon,* 10 Mod. 335; *State* v. *Haines,* 30 Me. 65; *Rex* v. *Rogier et al.,* 1 B. & C. 272; *Lord* v. *State,* 16 N. H. 325.

*Frank D. Thompson,* State's Attorney, and *David E. Porter* for the State.

The first count charged the keeping of a common gambling house, and this was an offence at common law. *Rex* v. *Rogier,* 8 E. C. L. 117; *Rex* v. *Taylor,* 10 E. C. L. 166; 4 Blackstone's Commentaries 168; *Lord* v. *State,* 16 N. H. 325, 41 Am. Dec. 729; *People* v. *Jackson,* 3 Denio 101, 45 Am. Dec. 449; 14 Am. & Eng. Enc. of Law (2nd Ed.) 666; 14 Am. & Eng. Enc. of Law (2nd Ed.) 696; *Com.* v. *Bulman,* 118 Mass. 456.

It is sufficient to allege generally that respondent kept a common gambling house. *Rex* v. *Rogier,* 8 E. C. L. 117; *Rex* v. *Mason,* 1 Leach 548; *Rex* v. *Taylor* 10 E. C. L. 166; *Lord* v. *State,* 16 N. H. 325, 41 Am. Dec. 729.

HASELTON, J. This is an indictment in two counts. In county court the case was heard on demurrer to the indictment and each count thereof. The court, *pro forma,* over-

ruled the demurrer and adjudged the indictment sufficient. The respondent excepted and the cause was thereupon passed to this Court.

The State concedes that the second count is bad, and it is so obviously insufficient that we hold it bad without reciting it or discussing it.

The first count charges "that Alonzo Carrick of St. Johnsbury, in the County of Caledonia, heretofore, to wit, on the 25th day of March, A. D. 1904, at St. Johnsbury in said County of Caledonia, did unlawfully keep a certain place and rooms, used as a place of resort, situated at St. Johnsbury, aforesaid, on the side of Eastern Avenue, in the Republican Block, so-called, to be resorted to, used and occupied for gambling, and did then and there knowingly permit the same to be resorted, used and occupied for gambling by divers persons whose names are to the grand jurors unknown, to the common nuisance of all good people of this State, contrary to the form and effect of the statute," etc.

The omission of the word "to" after the word "resort" the second time the latter word is used is a mere grammatical inaccuracy which requires no serious consideration. This count does not, however, charge an offence under any statute now in force and the state's attorney does not claim that it does. V. S. 5125 reads: "A person who sets up or promotes a lottery for money, or disposes of property by a lottery, and a person aiding or concerned in so doing or who knowingly allows premises owned or occupied by him or under his control to be used for that purpose, or by persons raffling or using a game of chance for money or other property, shall be fined not more than two hundred dollars."

This statute is very broad and specifies several offences. Under it a person is criminally liable who knowingly allows premises owned or occupied by him or under his control to

be used by persons using a game of chance for money or other property.

The pleader, however, has not undertaken to proceed under this statute. V. S. 5135 renders one criminally liable "who has or keeps on premises owned or occupied by him implements or things used in gambling, and permits persons resorting to such premises to use such implements or things for the purpose of gambling." Other sections of the statutes prohibit in very broad terms wagering and gaming.

The claim of the State is that the first count which purports to be brought under some statute is good at common law. This count was apparently framed to meet the requirements of that part of the repealed prohibitory liquor law relating to nuisances, in which gambling was put on a footing with the unlawful keeping or disposition of intoxicating liquor. See the form prescribed by V. S. 4554. Some words are added but none which affect the essential allegations.

Can this count be held good at common law? The gaming house or place which the common law regarded as a nuisance, and which at common law was indictable as such was a "common" gaming house or place and was proceeded against as such. Many allegations were used which were surplusage, but it was essential to allege that the house was a common gaming or gambling house, and, perhaps, that it was kept for lucre and gain. See Stat. 23 Hen. VIII, C, 9, s. 11. 2 Hawkins's P. C. Leach's Ed. Chap. 37 s. 6. And see the forms of indictments at common law in Chitty's Criminal Law and Wharton's Precedents.

The question is not what the common law ought to have been, but what it in fact was. The states generally have taken higher ground in this respect than did the common law, and the whole subject has pretty generally been covered by statute. The whole subject was fully covered in this State

until the repeal of the liquor nuisance law, and while the repeal of the part of that law which related to gambling places was probably inadvertent it was none the less effectual.

*The pro forma judgment is reversed, the demurrer sustained, the indictment adjudged insufficient and quashed, and the respondent is discharged.*